·DAVID C. NORTON *vs.* UNIVERSITY OF MAINE.

Penobscot.    Opinion March 5, 1910.

*Contracts.    Customs and Usage.    Local Usage.    Verdict.*

One employed to excavate to a specified grade at a stated price per cubic yard cannot recover for excavation below that line, incidental to performance of the contract.

A local usage does not affect a contract, unless known to the parties, so that they may be presumed to have contracted with reference to it.

One relying on a local usage as affecting a contract has the burden to show knowledge thereof by the parties.

Knowledge of a local usage may be established by showing its existence to have been so uniform, general, and of long standing that one might be presumed to know it.

Under the rule that a local usage cannot be shown to contradict or vary a contract, one employed to excavate to a specified grade at a stated price per cubic yard cannot show a local usage entitling him to recover for excavation below that grade, incidental to performance of the contract.

That a defendant did not object to the direction of a verdict against him for a specified sum, less than the amount claimed by plaintiff, for an excavation below a specified grade to which he was employed to excavate, does not show the defendant's liability for such extra excavation.

On exceptions by plaintiff.    Overruled.

Assumpsit on account annexed brought to recover the sum of $635.50, and interest, for labor in excavating 205 cubic yards of ledge below grade for the foundation of the Agricultural Building at Orono.    Plea, the general issue.    At the conclusion of the plaintiff's testimony the presiding Justice directed the jury to return a verdict for the plaintiff for $132.65 and no more, the amount conceded to be due by the defendant, and a verdict was so returned. The plaintiff excepted to the aforesaid order.

The case is stated in the opinion.

*Louis C. Stearns, and Louis C. Stearns, Jr.*, for plaintiff.

*Wm. T. Haines, and John E. Nelson*, for defendant.

SITTING:   EMERY, C. J., PEABODY, CORNISH, KING, BIRD, JJ.

CORNISH, J.   This is an action of assumpsit on an account annexed wherein the plaintiff seeks to recover the sum of six hundred and thirty-five dollars and fifty cents for labor in excavating 205 cubic yards of ledge below grade for the foundation of the Agricultural building of the University of Maine at Orono.   The plaintiff in August or September, 1907, made an oral contract with a representative of the defendant for excavating the cellar of this building, the price agreed upon being sixty cents per cubic yard for all dirt, and three dollars and ten cents per cubic yard for all ledge removed. Work was begun at once and as soon as the soil was removed and the ledge laid bare, the plaintiff asked for a plan, which was furnished by an instructor in the university who was the engineer in charge of the work.   This plan or cross section showed the depth desired.   The plaintiff continued this work in his own way by blasting the ledge so that he reached the designated grade in some places and went below it in others.   He has been paid for all dirt and ledge excavated and removed to grade, and this controversy involves his claim to compensation for the ledge excavated below grade.   At the conclusion of the testimony for the plaintiff the presiding Justice directed a verdict for the plaintiff for $132.65, the amount conceded by the defendant to be due, and the case is before this court on plaintiff's exceptions to this ruling, as he claims that he is entitled to the full contract price of $3.10 per cubic yard for the entire 205 cubic yards excavated below grade.   He rests his claim on two grounds, first, an implied liability arising of necessity out of the contract itself; second, a local usage.   Neither ground is tenable.

1.   The plaintiff contends that he had a right by implication under the contract to excavate and remove as he did and to receive pay for such excavation below grade because such excavation was necessary and incidental to the reaching of the grade required by the defendant's engineer.

The reason assigned works against his contention rather than in its favor.   Under his contract he was obliged to reach a certain

depth fixed by the plan, and to remove all earth and ledge to that level. He could not stop short of that, he was not obliged to go below it. Such lower level could be of no advantage to the defendant, was not within the terms of the contract and could not have been within the contemplation of the parties. If the excavation below grade was necessary and incidental to the reaching of the required grade, it was necessary "as a means to an end and not as the end itself;" it was the method employed by the plaintiff to perform his contract and as he testified, was not the only practicable method but the easier and more economical one. If in blasting he had not set the holes so deep, many so called hummocks would have been left which would have required drilling and would have involved greater expense. It was immaterial to the defendant what method the plaintiff adopted if the required level was reached, and the deeper blasting and consequent removal were as much a necessary incident to the performance of the contract in one case as the shoaler blasting and the consequent drilling would have been in the other. For neither by itself was the defendant liable. It engaged to pay only for the excavation of a cube of certain dimensions. The plaintiff undertook to do the work, was as familiar with the situation as the defendant and simply did in his own way what he contracted to do.

In *Voorhis* v. *Mayor*, 62 N. Y. 498, the plaintiff entered into a contract for regulating and grading a street the entire width, with a specified price for rock excavation, and he claimed to recover for rock excavation made outside the lines of the street, in sloping the sides, which was necessary to effect the excavation within the street.

The court in disallowing the claim state reasons that apply with equal force to the case at bar: "The plaintiff concedes that if he had excavated the rock upon perpendicular lines, at just the width of the avenue and down to the grade, he would have performed his contract fully and could not have been compelled to have done more. It follows that the excavation of it with slopes was not within the terms of the contract, nor so in the contemplation of the parties as that the city could insist that it should be done, or the contractor

insist upon doing it at the expense of the city. It is found by the learned referee to have been necessary to effect the excavation that the slopes should be made. But it was necessary as a means to an end, not as the end itself. It was more convenient, more easy, cheaper to the appellant, to blast as it were at random, than with strict observance of the exterior lines of width of the street. Unless the making of the slopes was called for by the terms of the contract, or was within the intention and contemplation of the parties, it is not to be said that because they were a necessity to the contractor as a mode of excavation, the city is to be charged with the cost of removing the rock from them, no more than with the expense of other means necessary for him to employ therein." *Gallick* v. *Ebling*, 102 N. Y. Supp. 803, 52 Misc. Rep. 533, decided in 1907, is even more strikingly in point. In that case the court held that when a contractor agreed to make an excavation of rock for a cellar for a certain price per cubic yard, to the satisfaction of the defendant's architect and he blasted in such a manner that rock below the required level was broken up and the architect required such loose rock to be removed in order to obtain a solid foundation, the contractor was not entitled to recover for the excavation of such broken rock. In point also are *Stuart* v. *Cambridge*, 125 Mass. 102; *Leavitt* v. *Dover*, 67 N. H. 94; and *Ashley* v. *Henahan*, 56 Ohio St. 559, 47 N. E. Rep. 573.

2. USAGE. The plaintiff further relies upon an alleged usage in the business under which the contractor is entitled to compensation for excavating the extra amount below grade in order to reach grade, and this was the main issue at the trial. The evidence to prove the existence of such a usage was meagre and indefinite. It came from only one witness, a civil engineer, while one Sawyer, a contractor, of large experience, also called by the plaintiff was unable to state that such a general and uniform usage prevailed even in that vicinity.

But admitting that in the absence of evidence to the contrary a jury might have been justified in finding that such usage did exist, certain insuperable obstacles prevent its application in this case.

In the first place it was not claimed to be other than a local usage and as such it could have no effect unless known to both parties so that they might be presumed to have contracted with reference to it.    If not known to the parties their rights and liabilities could in no event be affected by it.    *Nonotuck Silk Co.* v. *Fair*, 112 Mass. 354; *Fowler* v. *Pickering*, 119 Mass. 33; *Sawtelle* v. *Drew*, 122 Mass. 228; *Marshall* v. *Perry*, 67 Maine, 78.    The burden rested upon the plaintiff to prove such knowledge.  This burden might be met by the introduction of evidence showing the existence of the usage to have been so uniform, general and of such long standing that a party might be presumed to know it, but such a presumption is one of fact.    Here there is no evidence that could sustain such a presumption, and as to actual knowledge, there was no evidence that the defendant's representative had ever heard of such a usage, while the plaintiff admitted that he himself knew nothing of it until after the contract was made.    Under these circumstances it is impossible to read any such usage into the contract.

In the second place the alleged usage is of no effect because it is repugnant to the express contract made by the parties and is unreasonable.    This court in *Marshall* v. *Perry*, 67 Maine, 78, after a careful analysis of the decided cases stated the doctrine in these words :    Page 82.    "The current of authorities in this country, both state and federal, establishes the proposition that local usage cannot be shown to contradict or vary the terms of a contract express, or implied by law, or control its legal interpretation and effect." See also *Randall* v. *Smith*, 63 Maine, 105, and *Ulmer* v. *Farnsworth*, 80 Maine, 500.    In compliance with this principle where stone cutters contracted to furnish stone for a building according to plans and specifications of an architect, and in carrying out their contract it was necessary to have wooden patterns made, it was held in an action brought by the contractors to recover the amount paid for these patterns, that evidence of a usage for stone cutters in cutting stone for a building to procure such patterns and recover cost from the owner was inadmissible.    *Davis* v. *Galloupe*, 111 Mass. 121.

*Rogers* v. *Hayden*, 91 Maine, 24, involved a contract for stone sold and delivered on the premises for building a cellar wall. The plaintiff claimed that by reason of a local usage the stone were to be measured as solid wall after they were laid, while the defendant claimed that they should be measured when and where delivered according to the contract. · The court rejected the local usage and said: "The contract fixed the price per cubic yard delivered. That meant cubic yards of stone, not of masonry. That meaning cannot be varied by local usage, unless it be uniform, reasonable and known to the parties, so they may be presumed to have contracted with reference to it. *Marshall* v. *Perry*, 67 Maine, 78; *Schooner Reeside*, 2 Sum. 567. The measure in the wall was over 102 cubic yards, on the dump about 58. Certainly a usage that might nearly double the quantity of · goods sold must be unreasonable. Better have honest measure and fair price."

· A similar increase of liability would obtain in the case at bar if this local usage is injected into the contract, for while the cost of removing the ledge above the designated level as contracted for was $1072.60, that of removing the ledge below the level if governed by usage would be $635.50 additional. Such a result emphasizes the unreasonableness of the claim contended for.

The fact that the defendant did not object to a verdict against it for the amount ordered by the presiding Justice, has no probative force upon the legal issues between the parties. It may have been regarded as compensation for removing the rock below grade after it was blasted in accordance with additional instructions from the defendant, or it may have been in the nature of a concession to end litigation. Whatever the reason the result was favorable to the plaintiff, more favorable perhaps than a strict construction of the contract would have permitted.

The ruling of the presiding Justice was without error and the entry must be,

*Exceptions overruled.*