## FIRST DEPARTMENT, MARCH, 1936.

WALTER J. FAHY and Others, Copartners Doing Business under the Firm Name and Style of WALTER J. FAHY & COMPANY, Respondents-Appellants, *v.* IRVING TRUST COMPANY, Appellant-Respondent.

Cross-appeals from a judgment of the Supreme Court entered in the New York county clerk's office on March 16, 1935.

The defendant appeals from that part of the judgment, entered on a verdict, which adjudges that plaintiffs recover of defendant the sum of $14,976.60. The plaintiffs appeal from that part of said judgment which dismissed the seventh and eighth causes of action alleged in the complaint.

Judgment affirmed, without costs. No opinion.

Present — Martin, P. J., McAvoy, O'Malley, Townley and Glennon, JJ.; Martin, P. J., dissents and votes for affirmance on plaintiffs' appeal and to reverse the judgment in favor of the plaintiffs and to dismiss the complaint.

MARTIN, P. J. (dissenting). By the verdict of a jury the plaintiffs have been awarded damages upon the ground that the defendant negligently delayed notifying the plaintiffs of the non-acceptance of certain drafts deposited with the defendant for collection.

The plaintiffs, a firm of stockbrokers, purchased certain securities for the account of one William Holloway, Jr., of Durham, N. C. On the 2d, 3d, 4th and 9th of June, 1930, they deposited with the defendant drafts drawn on Mr. Holloway at the First National Bank Building in Durham, N. C., attached to which were securities to be delivered to Mr. Holloway upon payment of the drafts. The drafts were all payable to the order of the defendant. In each case the face amount of the draft was credited by the defendant to the account of the plaintiffs and the entire amount withdrawn by the latter on the same day or within a day thereafter. The amounts so withdrawn were debited by the defendant to the loan account of the plaintiffs. Attached to the drafts were riders reading " No protest." Immediately after their receipt, the defendant forwarded the drafts and certificates to the Citizens National Bank at Durham, N. C., with instructions to deliver the certificates against payment of the drafts. On the sixth of June, not having heard from its correspondent at Durham, the defendant sent out a tracer. On the tenth of June defendant received back an answer that Mr. Holloway was out of town and was expected back that day. On the thirteenth of June the defendant telegraphed inquiring as to the fate of the drafts, and on the following morning,

Saturday, received a wire that the drafts had not been paid. Plaintiffs were notified accordingly on the same day. They thereafter sent a representative to Durham to interview Mr. Holloway, and having ascertained that he would not accept the drafts, on June eighteenth they requested the defendant to return the unpaid drafts. On June nineteenth the drafts were received by the defendant. On June twentieth plaintiffs delivered to the defendant their certified check for $249,255.27, the aggregate face amount of the drafts, and received back the drafts and stock certificates. The amount so received was credited by the defendant to the loan account of the plaintiffs, and the transactions subsequently were closed by the payment by plaintiffs of the interest charge. Plaintiffs in September, 1931, for the first time asserted a claim against the defendant in connection with the matter, claiming to have been damaged by decline in the market value of the securities.

Notwithstanding the express waiver of notice of protest above referred to, and the provision of section 182 of the Negotiable Instruments Law that "A waiver of protest, whether in the case of a foreign bill of exchange or other negotiable instrument, is deemed to be a waiver not only of a formal protest, but also of presentment and notice of dishonor," the plaintiffs have been awarded damages upon six of the causes of action alleged in the complaint in connection with drafts deposited with the defendant on June second, third and fourth, representing the difference between the value of the securities when plaintiffs claim they should have been returned and their value when actually returned, upon the theory that the defendant was negligent in failing to notify plaintiffs of the non-payment of the drafts within four days after their receipt, pursuant to a custom of the defendant in the conduct of its business to notify customers within four days of the non-payment of drafts collectible in North Carolina.

Proof of said custom, however, was improperly admitted over objection of the defendant, since it was not shown to have been known to the plaintiffs, and hence could not have been in contemplation of the parties when the contracts were entered into. As was said in *McDonough* v. *Evans Marble Co.* (112 Fed. 634): " Evidence of a usage is not admissible if it appears that it was unknown at the time of the contract to the party setting it up and seeking its benefits; for in such a case there would be no presumption that the contract was made with reference to it. Lawson, Usages & Cust. 58; *Silk Co.* v. *Fair*, 112 Mass. 354; *Daun* v. *Brewery Co.*, L. R., 8 Eq. 155."

In *Walls* v. *Bailey* (49 N. Y. 464, 475) it is said: " In *Wheeler* v. *Newbould*, 5 Duer, 29, it is expressly held that proof of a local usage can never be received to vary the construction which the law would otherwise give to a contract, unless it is clearly proven that its existence was known to the parties, and that their contract was made in reference to its terms. The judgment in the case last cited was affirmed in this court (16 N. Y. 392)."

The question whether the defendant was negligent in failing until June thirteenth to notify the plaintiffs of the non-payment of drafts received for collection between June second and June ninth, in the light of the facts that the plaintiffs had expressly waived notice of protest and that the defendant had been advised on the tenth of June that the drawee of the drafts was out of town, assumes quite a different complexion dissociated from the aforesaid custom of the defendant. Moreover, there was no evidence that such custom obtained under the circumstances present

in the case at bar. Furthermore, in no event can the defendant be held to have been negligent upon the aforesaid facts. As noted, the defendant on June tenth learned that the notes had not been presented because the drawee was out of town. At that time there had been no refusal to accept. There was thus no occasion for advising the plaintiffs, particularly where, as here, the evidence shows that in the case of prior drafts on Mr. Holloway deposited by the plaintiffs with defendant for collection twenty days elapsed between the deposit and collection of the drafts. Within three days after defendant was advised of the non-payment plaintiffs were notified. Under such circumstances a finding of negligence on the part of the defendant should not be sustained.

It follows that, in so far as appealed from by the plaintiffs, the judgment should be affirmed, with costs, since, for the reasons above set forth, the court at Trial Term properly dismissed the seventh cause of action based upon the draft deposited with the defendant on the ninth of June. The eighth cause of action, which sought to recover special damages upon the basis that the plaintiffs continued to sell securities to Mr. Holloway to their loss, which they would not have done had they known of his refusal to accept the drafts in question, was also properly dismissed, not only because defendant was guilty of no negligence, but because the damages claimed are not such as were reasonably within the contemplation of the parties.

In so far as appealed from by the defendant the judgment should be reversed and judgment directed in favor of the defendant dismissing the complaint, with costs.